THE PEOPLE OF THE STATE OF NEW YORK ex rel. SAM BLUE, Relator, against EUGENE J. KEARNEY, as Warden of the City Prison of the City of New York, Borough of Brooklyn, Respondent.

Supreme Court, Special Term, Kings County, October 27, 1943.

*Hyman Barshay, Sam Bader, Charles R. Rubin* and *Maurice Sherman* for relator.

*Thomas Cradock Hughes, Acting District Attorney (Fred J. Loughran* and *Harry J. Walsh* of counsel), for respondent.

CUFF, J. That no person shall be subject to be twice put in jeopardy for the same offense, is one of the original provisions of the Constitutions of the State of New York (art. I, § 6) and of the United States (5th Amendt.). In 1881, a law enacted in this State provided: "If it appear by the testimony, that the facts proved constitute a crime of a higher nature than that charged in the indictment, the court may direct the jury to be discharged, and all proceedings on the indictment to be suspended, and may order the defendant to be committed, or continued on or admitted to bail, to answer any new indictment which may be found against him for the higher offense." (Code Crim. Pro. § 400; L. 1881, ch. 442.)

In the midst of a trial of the relator in the County Court on an indictment charging manslaughter, first degree, and over his objection, the learned County Judge, availing himself of the powers granted by the above statute, discharged the jury, suspended all proceedings and directed the District Attorney to resubmit the subject matter of the indictment to the Grand **Jury,** stating that "the facts in this case so far shown prove

that the defendant should have been indicted not for manslaughter but for at least murder in the second degree if not first degree.'' There followed an indictment of relator for murder in the first degree based upon the precise incident which supported the first indictment. The relator is being held without bail on that charge.

The accused, by this habeas corpus proceeding, seeks his release on the ground that the prosecution contravenes the constitutional protection to which he is entitled against being tried twice for the same offense.

Blackstone maintained that a jury ought to return a judgment in all cases except those of evident necessity (4 Blackstone's Commentaries 359), and such was the law of England at the time our Federal Constitution was adopted. That requirement necessitated the ruling that a disagreement of a jury produced the same result as an acquittal because to retry the defendant would be to expose him to jeopardy once more. The United States courts followed that legal theory until 1824 when it was abandoned in favor of the view that a jury incapable of agreeing could be discharged by the trial court and a retrial held without violating the double-jeopardy provision of the Constitution. (*United States* v. *Perez,* 9 Wheat. 579.) The State of New York had come to that conclusion still earlier. (*People* v. *Olcott,* 2 Johns. Cas. 301 [in 1801] and [in 1820] *People* v. *Goodwin,* 18 Johns. 187.)

The District Attorney argues that section 400 of the Code of Criminal Procedure presents just another logical exception to the rigid Blackstone rule. Relaxation of the original hard and fast holding was necessary lest the salutary provision itself be totally lost to good government by reason of absurd enforcement.

The guarantee to the People contained in the organic law against being subjected to double jeopardy by prosecuting authorities was intended to forestall the kind of persecution and oppression which such vicious practices alone are capable of engendering. The exceptions to the Blackstone rule, of which jury disagreement was the first, have been extended to include death or incapacity of judge (*People ex rel. Brinkman* v. *Barr,* 248 N. Y. 126) or juror (*People* v. *Goodwin,* 18 Johns. 187, 204, *supra*) as well as an incident occurring during the trial created by the defendant and prejudicial to the prosecution (*Mack* v. *Commonwealth,* 177 Va. 921). Those exceptions could not have been the official abuses which motivated the establishing of the constitutional safeguard. They are too reasonable, sensible and fair to have precipitated the reform.

There has been and there should be no whittling away at that pillar of justice — yes, of humanity — one trial for one offense; yet sound· reason which considers society, as well as the rights of the accused, should be the guide when interpreting the wholesome spirit of the language bequeathed by the founding fathers.

The New York rule concerning jeopardy of the accused is: " * * * if the court has jurisdiction and all prior proceedings are valid, a prisoner is placed in jeopardy when he has been arraigned and pleaded to a valid charge, a jury has been examined and sworn, and evidence given." (*People ex rel. Meyer* v. *Warden,* 269 N. Y. 426, 428.) There is no dispute that each element of that rule existed at the " suspended " trial of petitioner. The only escape from its violation is by way of another exception. The above case recognizes the exceptions heretofore referred to.

The District Attorney argues that the action authorized by section 400 of the Code of Criminal Procedure is consonant with the recognized exceptions, logical and necessary to the effective prosecution of criminals; that it leaves the double-jeopardy provision unweakened.

The cause for the mistrial set forth in section 400, that the indictment should have been more serious in its charge, is not even remotely related in nature to the causes for mistrials which are recognized as not violative of the double-jeopardy rule. The occurrences which are accepted as not opposed ·to the rule arise without motive. The occurrence which the statute ·(§ 400) anticipates embraces a deadly motive, viz., to provide greater punishment for the accused.

It should be noted that the statute fails to provide a remedy to meet the situation when a prosecution is being shuttled back and forth between court and grand jury, each determined to cleave to its opinion, while the accused languishes in jail or under the blight of a criminal charge unable to obtain a final determination.

The District Attorney also contends that public policy requires that section 400 be sustained. This section provides an overseer for the grand jury. Some testimony that the precaution is misplaced and unneeded may be gleaned from the record that there is no reported case where the power granted has ever been exercised before. An error in the charge in an indictment may always be corrected by a superseding pleading. It is only after the trial has started that the prosecutor loses that control. But he no longer needs it when the trial com-

mences! By that time he knows the force of his evidence and whether it conforms to the charge in the indictment. He is an elected official. The responsibility rests heavily upon him to properly advise the grand jury. It is the duty of the latter to accuse in accordance with the evidence. Our criminal jurisprudence is not aided by the appointment of a supervisor for the district attorney and grand jury. Laxity upon the part of either should be treated with as provided in our laws. Instead of the public policy of the State requiring the retention of section 400, if this court appreciates correctly such public interest, it demands its nullification so that the dignity and standing of the district attorney and the grand jury remain unfettered.

The same form of legislation was held to contravene the same form of double-jeopardy constitutional provision in California and the enactment was voided. (*People* v. *Hunckeler*, 48 Cal. 331.)

Section 400 attempts to legalize the practice banned by the organic laws. It is unconstitutional and void. The action of the Trial Judge in suspending the trial lacked authority. The relator was placed in jeopardy at the trial for manslaughter. The first-degree-murder indictment is a charge based upon the same offense. The relator is discharged. This writ is sustained.