Breitel, J.
(dissenting). The issue, raised in prohibition proceedings, is whether a defendant in a criminal prosecution is placed in jeopardy when a mistrial is declared, solely because of the unavailability of witnesses for the prosecution, after the impaneling of the jury but before the introduction of evidence.
On June 24, 1966 petitioners were indicted for the robbery of Ernest Neal. In preparing his case during January and February of 1967, the prosecutor subpoenaed victim Neal and an eyewitness, Fred Chaffin. Both appeared in his office on February 10, the date when jury selection was begun, and promised to return on February 14. When neither witness appeared on that date, a police search was started, and material witness papers were later prepared. Nevertheless, the prosecutor continued with the selection of jurors. The impanelment was completed on February 16, and the prosecutor obtained an adjournment to February 20. When the case was resumed on the 20th, Neal was still missing, although witness Chaffin was in custody as a material witness. Consequently, the Trial Judge, on his own motion and over the petitioners’ objections, declared a mistrial and set the case down for retrial on February 27.
Under the rule which prevails in all the other States which have considered the question and in the Federal courts, jeopardy attaches in a jury-tried case ‘ ‘ when a person has been placed on trial on a valid indictment or information before a court of competent jurisdiction, has been arraigned, and has pleaded, and a jury has been impaneled and sworn ”. (22 C. J. S., Criminal Law, § 241, p.. 637, citing some 33 States in accord; see, e.g., Downum v. United States, 372 U. S. 734; Whitmore v. State, 43 Ark. 271; Kennick v. State, 107 So. 2d 59 [Fla., 1958] [dictum]; Gillespie v. State, 168 Ind. 298; State v. Yokum, 155 La. 846 [dictum]; Pickens v. State, 393 P. 2d 889 [Okla., 1964]; Cornero v. United States, 48 F. 2d 69 [9th Cir., 1931]; 1 Bishop, Criminal Law [9th ed.], § 1015; 1 Cooley, Constitutional Limitations [8th ed.], pp. 686-687; 1 Wharton, Criminal Law and Procedure [Anderson ed.], § 138 [citing 26 States in accord]; but cf. A. L. I., Model Penal Code, § 1.08 and Comment to § 1.09, Tent. Draft No. 5, p. 53, recognizing the rule but suggesting *557 adoption instead of a. provision requiring the swearing of a witness; Proposed New York Criminal Procedure Law [Temporary Commission on Revision of tlie Penal Law and Criminal Code, 1967], § 20.30, inch Staff Comment.)
In its recent decision in Downum v. United States (supra) the Supreme Court applied the prevailing rule in terms relevant to the instant case. The prosecutor in the Downturn case — like the one in this case — ■ allowed “the jury to be selected and sworn even though one of [his] key witnesses was absent and had not been found ” (372 U. S. 734, 735, supra). When the witness failed to appear before the taking of any evidence, a mistrial was declared. The Supreme Court held that jeopardy had attached and that the risk of the witness’ nonappearance lay with the prosecution. It acknowledged, however, that the absence of witnesses might justify discontinuance of a trial under the “manifest necessity” doctrine applied in cases such as Wade v. Hunter (336 U. S. 684).
In the Wade case, a change in the military situation made it impossible for the prosecutor to produce witnesses at a war-time court-martial. Unlike the instant case, this difficulty arose after the point of jeopardy had been passed. Thus it could not be said that the prosecutor there went to trial without first securing the presence of necessary witnesses. Of course, here, the prosecutor was undoubtedly relying on a view, not uncommon or of recent origin, that jeopardy does not attach in New York until some evidence has been taken.
If the prevailing rule were applied here, retrial would be barred except, perhaps, for the doctrine of manifest necessity which has been narrowly confined in New York. In this State, the doctrine of manifest necessity has not thus far encompassed the mere inability to produce evidence (see People v. Barrett, 2 Caines 304; cf. People ex rel. Blue v. Kearney, 181 Misc. 981, affd. 292 N. Y. 679).
Respondent District Attorney argues, however, that the New York rule regarding attachment of jeopardy requires the introduction of some evidence not merely the impaneling of the jury (citing People ex rel. Meyer v. Warden, 269 N. Y. 426, 428). In New York the rule has occasionally been applied in general terms, but largely to non jury cases (see, e.g., Matter of Nolan v. Court of Gen. Sessions, 11 N Y 2d 114; People v. Clark, *558 3 A D 2d 700; People v. Pearl, 272 App. Div. 563). Notably, in other jurisdictions the rule requiring the introduction of evidence is applied to determine when jeopardy attaches to nonjury cases, and the rule is expressed as being thus limited (People v. Laws, 29 Ill. 2d 221; State v. Blackwell, 65 Nev. 405; 22 C. J. S., Criminal Law, § 241, pp. 639-640; 1 Wharton, Criminal Law and Procedure [Anderson ed.], § 138, pp. 309-310). The rationale appears to be that in nonjury cases the taking of evidence marks the commencement of the trial — a point fixed in the jury trial at the impaneling of the jury (cf. People v. Matiasevich, 12 Cal. App. 2d 759, 762).
The New York decisions, considered in light of their facts and the development of double jeopardy concepts, do not either uniformly or conclusively establish that jeopardy in a jury trial does not attach until some evidence is introduced. The Meyer case (269 N. Y. 426, supra), most often cited to support the assertion of the New York rule in jury trials, did not on its facts involve the question of attachment of jeopardy; evidence had been introduced and the point of jeopardy was passed under either test. In summarizing, however, the elements of former jeopardy in New York, the court in the Meyer case adopted an earlier statement in King v. People (5 Hun 297). In the King case, which also did not present a question of the time of jeopardy attachment, the court stated: ‘ ‘ In other courts and in other States a very technical rule is adopted. A prisoner is held to have been once in jeopardy if a jury has been [impanelled] and discharged, or allowed to separate before or without a verdict (Whart., §§ 573-580.) I think that our courts have not gone beyond this: that a prisoner is once in jeopardy when he has been arraigned and pleaded to a valid indictment, a jury has been sworn, and evidence given, and then, without his consent, a juror has been withdrawn * * * (People v. Barrett * * *) ” (5 Hun 297, 299).
The King opinion did not attempt to establish new limitations upon the concept of attachment of jeopardy; rather, it sought to describe the result reached in the Barrett case (2 Caines 304, supra). The Barrett case was the first in New York to depart from the English rule requiring a prior judgment of conviction or acquittal before barring a later prosecution for the same offense, and to establish a true rule of double “ jeopardy ” (cf. *559 People ex rel. Stabile v. Warden, 202 N. Y. 138, 150-151). In that case, after the introduction of some evidence, a juror was withdrawn because the prosecutor had insufficient evidence to proceed. The defendants argued that it was error to discharge the jury after it had been “ sworn and charged ” (id., p. 305). In accepting this argument, the court noted that: “ If the prosecutor disliked the jury, or some of them, or hoped to find the defendant less prepared at a future day, or wished, unnecessarily, to harass him, he might, at any time, attain his end, if, by solely alleging the want of proof, after a jury were sworn, he could get rid of them.” (2 Caines 304, 308-309, supra.)
The dangers recited by the court arise at the point of impanelment, and need not await the introduction of evidence. In view of the language used by the court, it is not reasonable to interpret the Barrett holding as turning upon the introduction of evidence.
Cases subsequent to the Meyer case have revealed a great deal of confusion as to the rule defining the attachment of jeopardy in jury trials (compare People v. Reed, 276 N. Y. 5, 12 [dictum]; People ex rel. Rosebrough v. Casey, 251 App. Div. 867; People v. Colon, 18 Misc 2d 1061; People ex rel. Mathias v. O’Hara, 200 N. Y. S. 2d 173 [dictum — Sup. Ct., Nassau County], with People v. Willingham, 52 Misc 2d 1067; People v. Valentine, 31 Misc 2d 983). These cases demonstrate that it is not at all correct that the rule has been uniform in this State or that a similar rule has been applied in all parts of the State.
These varying rationales, conflicting decisions, and the dubious historical support for the rule, expressed at best as a dictum in the Meyer case, leave the question open to a fresh review. Adoption of the rule that jeopardy attaches when the jury is impaneled would conform New York law to that of other States and would avoid the possibility of conflict with Federal standards (see United States ex rel. Hetenyi v. Wilkins, 348 F. 2d 844, 849-854 [2d Cir., 1965], cert. den. sub nom. Mancusi v. Hetenyi, 383 U. S. 913; cf. People v. Ressler, 17 N Y 2d 174). These are obviously highly desirable objectives so long as there is knowledge that there is a definite and practicable rule. In this case, for example, the prosecutor would have handled the litigation differently without difficulty. Moreover, in the light of the suggestion discussed later for broadening the grounds for a mis *560 trial, a prosecutor’s burden would be easy to bear. Even in this case, since a remand should be allowed to avail the prosecutor of a more liberal doctrine of manifest necessity than now obtains in this State, the prosecutor would have an easy burden to bear.
On this analysis, it is suggested that the proper rule for New York should be that jeopardy attaches in a jury case when the jury is impaneled and without the requirement that any evidence should be introduced. However, the doctrine of manifest necessity is also one that has not received definitive articulation in this State (compare People ex rel. Epting v. De Voe, 284 App. Div. 1092, affd. 309 N. Y. 818; People ex rel. Herbert v. Hanley, 142 App. Div. 421, 422, with Matter of Nolan v. Court of Gen. Sessions, 11 N Y 2d 114, 119, supra; People ex rel. Stabile v. Warden, 202 N. Y. 138, 151, supra; 1 Wharton, Criminal Law and Procedure [Anderson ed.], § 141, pp. 324, 328-329). If the prevailing rule were to be established in New York then it would seem appropriate also to reconsider the extent of the doctrine of manifest necessity as it has been applied in this State. In advancing the time in which jeopardy attaches there is some increased risk to prosecutions should witnesses become unavailable through no fault of the prosecutors. It would seem that the doctrine of necessity in this State should at least be as broad as it appears to be under the Federal rule, insofar as the unavailability of witnesses or evidence is concerned (Downum v. United States, 372 U. S. 734, 737, supra; Wade v. Hunter, 336 U. S. 684, supra).
Accordingly, I dissent and vote to remand the present proceedings to the Appellate Division for the purpose of directing appropriate hearings, as it may be advised, at Special Term or elsewhere, to determine as an issue of fact and as a matter of discretion whether on the evidence in this case the prosecutor was justified in seeking a discontinuance of the trial because of manifest necessity arising from the nonavailability of critically important witnesses.
Judges Scileppi, Bergau and Keating concur with Judge Van Voorhis; Judge Breitel dissents and votes to remit to the Appellate Division in a separate opinion in which Chief Judge Fold and Judge Burke concur.
Orders affirmed.