COMMONWEALTH *vs.* FRANCIS JULIANO.

Suffolk. November 2, 1970. — December 30, 1970.

Present: TAURO, C.J., SPALDING, KIRK, REARDON, & QUIRICO, JJ.

*Constitutional Law*, Double jeopardy. *Practice, Criminal*, Mistrial, Double jeopardy. *Evidence*, Improper question.

Following the empaneling and swearing of a jury for the trial of an indictment for carnal abuse of the defendant's daughter, the judge properly directed a mistrial by reason of a criminal record of a juror including crimes involving intrafamilial problems, then brought to the judge's attention, and the defendant's constitutional right not to be placed in

double jeopardy was not infringed by the empaneling of a new jury and subsequent trial upon the same indictment. [467–468]

At a criminal trial, there was no error in permitting the prosecutor to question a witness recalled as a rebuttal witness as to a certain conversation although it had been excluded as inadmissible at a previous voir dire. [469]

INDICTMENT found and returned in the Superior Court on May 8, 1969.

The case was tried before *Goldberg, J.*

*Reuben Goodman* (*Harriet A. Verbin* with him) for the defendant.

*Robert J. Glass*, Special Assistant District Attorney, for the Commonwealth.

TAURO, C.J. This is an appeal under G. L. c. 278, §§ 33A–33G, from a conviction on an indictment in three counts charging the defendant with unlawfully and carnally knowing and abusing a female child under sixteen.

The defendant offers two grounds for appeal — first, double jeopardy and, second, that he was prejudiced by the trial judge's ruling which permitted the prosecution to put certain questions to a witness about matters which previously had been construed as inadmissible at the voir dire.

On January 13, 1970, a jury were duly empaneled and sworn. Over the objection and exception of the defendant the court declared a mistrial because of a juror's criminal record.[1] At the point when this record was called to the court's attention, the clerk had not yet read the indictment.

---

[1] "The court made the following statement for the record: 'After the jury was impaneled and sworn, and before anything further was done, before any further proceeding in the case, attention of the Court was called to the fact that Juror No. 11, on April 24, 1969, was given a two-year suspended sentence in the House of Correction and the sentence was suspended to April 22, 1971. Also, that on March 21, 1969 he was given a two-year House of Correction sentence. He appeared on May 15, 1969 in this court. He pleaded guilty to assault and battery on his wife; was given a six-month sentence. The sentence was suspended and he was put on probation for two years. On the same day he pleaded guilty to non-support, that is, May 15, 1969. Was given a two-year House of Correction sentence in the Dorchester District Court on and after the prior sentence. He appeared and in this court pleaded guilty and stood on probation for six years. This record was called to the Court's attention as I just said, after the jury was sworn and before there were any further proceedings in the case. In my opinion it would be a travesty of justice to allow this juror to sit in a case that is called for trial and in the exercise of my discretion I therefore declared a mistrial.'"

The Commonwealth had no prior knowledge of the juror's criminal record. The empaneling of a new jury and the subsequent trial followed within the hour. The defendant objected to a second trial on the ground of double jeopardy in violation of the United States Constitution.

That a person cannot be twice put in jeopardy for the same offence is a fundamental principle of the common law. A defendant is similarly protected by the Fifth Amendment to the United States Constitution which is applicable to the States through the Fourteenth Amendment. *Benton* v. *Maryland*, 395 U. S. 784. There is meager authority in Massachusetts as to the exact time when a defendant is placed in jeopardy. In *Commonwealth* v. *McCormick*, 130 Mass. 61, the court said, "When a jury has been sworn to try the issue and the trial has been commenced, the jeopardy to which the defendant is exposed is held to have begun . . . ." We assume, without deciding, that the defendant Juliano was in jeopardy when the mistrial was declared.

In *Commonwealth* v. *McCormick, supra,* at 62, the court said, "From the necessity of the case, however, there must be many exceptions to the rule. Thus, it is held not to apply when the trial comes to an end by the sickness or death of a juryman; . . . or the illness of the judge; . . . or the expiration of the term of the court; . . . or the impossibility of obtaining an agreement of the jury within a reasonable time, or without physical coercion; . . . or, in short, whenever the case cannot be proceeded with by reason of some physical or moral necessity arising from no fault or neglect of the government. When such is the case, the trial may be stopped, and the defendant will not be protected from being afterwards tried upon the same indictment. . . ."

The power given to the court cannot be exercised arbitrarily or without good cause and can only be used for the protection of the public and the security of the defendant and his right to an impartial trial.

It is our view that the trial judge properly exercised his power of discretion in declaring a mistrial for the reason

that he set forth in the record (see fn. 1). Moreover, some of the juror's crimes involved intrafamilial problems (assault and battery and nonsupport of wife). The charge against the defendant in the instant case was carnal abuse of his thirteen year old daughter. We believe that there was no abuse of discretion on the part of the trial judge and that he acted properly to "protect the administration of justice by investigating at any stage of the trial an objection to the impartiality of any juror, and by withdrawing the case from the jury . . . [when] such juror . . . [was] found unfit to sit therein." *Commonwealth* v. *McCormick*, 130 Mass. 61, 62, referring with approval to the holding in *United States* v. *Morris*, 1 Curt. C. C. 23. See *Commonwealth* v. *Monahan*, 349 Mass. 139, 156.

At the second trial, thirteen year old Theresa Juliano testified that the defendant, her father, had intercourse with her on three occasions during a period of a few months, from October, 1968, to February, 1969. While cross-examining Theresa, defence counsel brought out that one Sister Suzanne Murphy had taken her to Theresa's home one evening and that there had been a conversation between Sister Murphy and Theresa's parents; and that thereafter Theresa said to her mother and father that she was sorry, that she had lied about her father. On redirect examination the prosecutor asked Theresa why she had said that she had lied, to which Theresa answered that she was "afraid" of her father. There was evidence that Theresa made her statement about having "lied" after Sister Murphy had left and after having spent some time in a room with her mother. Thereafter Sister Murphy testified without objection that in March she took Theresa to the Juliano home where she had some conversation with Mr. and Mrs. Juliano. The defendant's counsel objected to the admission of the conversation and thereupon the court held a "voir dire" in order to determine the admissibility of the evidence. At this hearing the prosecutor offered to prove certain acts and statements that took place during the visit of Sister Murphy, particularly that Mrs. Juliano had stood over Theresa with a belt and threat-

ened her with it, and ordered her to take back what she had told a playmate about her father. These questions were excluded. Later in the presence of the jury, the witness was allowed to testify that Mrs. Juliano went over to Theresa with a belt in her hand. However, the trial judge excluded the prosecutor's questions about statements made at this meeting. Then Mrs. Juliano, wife of the defendant, in her testimony denied having made any threatening statements. Thereupon Sister Murphy was recalled as a rebuttal witness and, subject to the defendant's objection and exception, was permitted to testify about the conversation during the incident with the belt which had previously been excluded.

The defendant contends that the court erred in permitting the prosecutor to question Sister Murphy about matters which the court had already determined at a voir dire to be inadmissible. In the presence of the jury, the prosecutor had stated that he had "nothing further from . . . [the] witness" but that he wanted to ask her certain questions for the record "and have them excluded." In the instant case the prosecutor did not engage in a particular line of questioning after he had been told not to do so by the court as occurred in *Bell* v. *State*, 433 S. W. 2d 443 (Tex. App.), cited by the defendant. On the contrary, the trial judge said that he could not rule on a question until it was asked. He permitted some questions to be answered and excluded others. It may be reversible error for a judge to permit a line of questions to be put to a witness over objection that is clearly inadmissible and designed to improperly influence a jury. Such a situation is not here presented.

*Judgments affirmed*