COMMONWEALTH vs. CHARLES CLEMMONS.

Suffolk.    December 2, 1975. — May 13, 1976.

Present: HENNESSEY, C.J., REARDON, QUIRICO, BRAUCHER,
KAPLAN & WILKINS, JJ.

*Constitutional Law,* Double jeopardy. *Practice, Criminal,* Probable
cause hearing, Binding over for trial, Double jeopardy.

Where a District Court judge had begun to hear evidence on a charge
of possesion of heroin but had made no statement as to whether the
proceedings were in the nature of a trial or a probable cause hear-
ing, it would be inferred that a trial on the merits had begun, and,
therefore, jeopardy had attached. [290-291] QUIRICO, J., dissenting.
Where a trial on a charge of possession of heroin had commenced in a
District Court and it then became apparent that the charge was in-
tended to be possession of heroin with intent to distribute, termina-
tion of the trial to allow the prosecutor to amend the complaint
was not justified as required by "manifest necessity" or the "ends
of public justice." [291-292]
A defendant whose trial in a District Court on a charge of possession
of heroin had commenced and was then adjourned to allow the
Commonwealth to amend the complaint so as to read possession of
heroin with intent to distribute, a charge of which the District Court
did not have jurisdiction, could not thereafter be convicted in Su-
perior Court of simple possession of heroin. [293-295]

INDICTMENT found and returned in the Superior Court
on April 3, 1974.

The case was tried before *McLaughlin,* C.J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*Geoffrey C. Packard (John G. Landes* with him) for the
defendant.

*D. Lloyd Macdonald,* Assistant District Attorney, for
the Commonwealth.

HENNESSEY, C.J.    In this appeal the defendant chal-
lenges his conviction in the Superior Court of possession

of heroin on the ground that he had previously been put in jeopardy for the same offense in the Municipal Court of the City of Boston. His appeal is before this court under the provisions of G. L. c. 278, §§ 33A-33G. We sustain the defendant's contention and we order a judgment of not guilty to be entered.

We summarize the facts as determined from a stipulation filed by the parties and the transcript of the proceedings below. On December 22, 1973, the defendant was arrested by members of the drug control unit of the Boston police department. He was booked on a charge of possession of heroin with intent to distribute.

The application for a complaint, typed by a police officer, indicated the charge to be under G. L. c. 94C, § 32 (possession of heroin with intent to distribute), but the accompanying narrative in the application described the offense as only possession of heroin. Detective Joseph Smith of the drug control unit presented this application for a complaint to a judge of the Municipal Court on December 24, 1973. Detective Smith, at the judge's request, recounted the circumstances surrounding the defendant's arrest, including the fact that the defendant was arrested in the process of what the police believed to be a sale of drugs and that twenty-six "decks" of heroin were seized either on or near the defendant. The judge initialed the application for a complaint, whereupon it was forwarded to the clerk's office.

The clerk, failing to note the discrepancy in the application between the statutory charge and the narrative charge, issued a complaint charging the defendant with simple possession of heroin. Detective Smith signed the complaint under oath administered by the clerk.

On December 24, 1973, the defendant was arraigned in the Municipal Court on the charge of possession of heroin, with Detective Smith in attendance. On January 30, 1974, a proceeding was held in the Municipal Court at which Detective Frost, one of the arresting officers, was the prosecutor. It would appear that Detective Frost believed that the complaint charged possession of heroin with intent to dis-

tribute in violation of G. L. c. 94C, § 32, an offense outside
the final jurisdiction of the Municipal Court (see G. L.
c. 218, § 26) and that, therefore, a probable cause hearing
was being held. See G. L. c. 218, § 30. The defendant and
his attorney believed that a trial on the charge of posses-
sion, an offense within the court's jurisdiction, was com-
mencing. No statement as to the nature of the proceedings
was made by the judge or anyone else.[1]

Detective Frost was sworn and testified as the Com-
monwealth's first witness with respect to the events sur-
rounding defendant's arrest. Prior to cross-examination of
Detective Frost by defense counsel, the presiding judge
asked why the complaint was for simple possession and not
possession with intent to distribute. Detective Frost re-
sponded that he believed that the complaint was for pos-
session of heroin with intent to distribute.

Over the defendant's objection, the judge allowed the
complaint to be amended so as to read possession of heroin
with intent to distribute. The proceeding was discontinued,
and on March 19, 1974, a probable cause hearing was held
before this same judge of the Municipal Court. The judge,
finding probable cause, bound the defendant over to the
grand jury, which subsequently returned an indictment
charging the defendant with possession of heroin with in-
tent to distribute.

The defendant's motion to dismiss the indictment on the
ground of prior jeopardy was denied by a judge in the Su-
perior Court in Suffolk County. Thereafter, the defendant
was tried by a jury and found guilty on so much of the
indictment as charged possession of heroin. The defendant
was sentenced to two years in a house of correction, execu-
tion of which was stayed pending appeal.

At the outset, we briefly address the question whether
the initial proceeding in the Municipal Court constituted

---

[1] We receive with respect the Commonwealth's contention that the
great volume of criminal business in the Municipal Court may well be
the reason for this apparent misunderstanding among the participants.
Nevertheless, as will be seen, this is not material to our reasoning or
the result in this opinion.

a trial on the merits, for if a preliminary hearing to determine probable cause was being conducted, jeopardy could not attach under the reasoning of *Commonwealth* v. *Britt,* 362 Mass. 325, 330 (1972), and *Commonwealth* v. *Mahoney,* 331 Mass. 510, 511-512 (1954). See *Burhoe* v. *Byrne,* 289 F. Supp. 408, 411 (D. Mass. 1968). There is no question that the judge in the Municipal Court had before him a valid complaint charging the defendant with simple possession of heroin. This crime, as defined in G. L. c. 94C, § 34, is a misdemeanor within the final jurisdiction of the Municipal Court. There is no indication, as required by *Corey* v. *Commonwealth,* 364 Mass. 137, 141 n.7 (1973), that the judge was considering declining jurisdiction as permitted under G. L. c. 218, § 30. Accordingly, we must infer that the judge intended to exercise jurisdiction and that a trial on the charge of possession of heroin was being held in the Municipal Court on January 30, 1974.[2] The fact that the prosecutor, Detective Frost, mistakenly thought that a probable cause hearing on the charge of possession with intent to distribute was being conducted is of no consequence, for no complaint had been issued for that offense.

Having concluded that a trial on the merits had begun, we further find that jeopardy had attached, for the judge had begun to hear evidence. *Serfass* v. *United States,* 420

---

[2] We do not mean to imply, as suggested by the dissent, that *Corey* imposes "a rule of constitutional implications." But we do believe that it is fair to infer that a trial on the merits was being held, since the judge had a valid complaint before him charging an offense over which the Municipal Court had final jurisdiction, but nevertheless, he failed to indicate, contrary to *Corey,* whether he was conducting a probable cause hearing or a trial on the merits. In these circumstances, there was every reason for the defendant to believe that a trial was being conducted.

Nor should it be maintained, as asserted by the dissent, that we have, by this decision, added another step to criminal prosecutions. While we adhere to the position announced in *Corey, supra* at 141 n.7, the implications of that footnote are not before us in this case. Our holding is limited to the situation where a trial on a valid complaint is aborted without justification over the defendant's objection, and the defendant is subsequently convicted in Superior Court of the lesser offense, the very offense for which he was tried in the Municipal Court. Such an occurrence is undoubtedly rare.

U.S. 377, 388 (1975). This court has adhered consistently to the view that acquittal or conviction is not a condition precedent to jeopardy attaching, but rather that jeopardy attaches when the defendant is put on trial. *Commonwealth* v. *Hart*, 149 Mass. 7, 9 (1889). *Commonwealth* v. *McCormick*, 130 Mass. 61, (1881). See *Stokes* v. *Commonwealth*, 368 Mass. 754, 760 (1975), citing *Breed* v. *Jones*, 421 U.S. 519, 531 (1975). Once Detective Frost had been sworn and had testified, the defendant was "put to trial before the trier of facts." *United States* v. *Jorn*, 400 U.S. 470, 479 (1971). Cf. *Commonwealth* v. *Micheli*, 258 Mass. 89, 91 (1927).

Although we find that the defendant had been placed in jeopardy, this conclusion "begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial." *Illinois* v. *Somerville*, 410 U.S. 458, 467 (1973). In light of our determination that jeopardy had attached, we are called on to assess the propriety of the judge's decision to discontinue the proceeding, over the defendant's objection, so as to permit amendment of the complaint. It is our opinion that the termination of the trial in this case for the purpose of trying the defendant for a greater offense was not required by " 'manifest necessity' or the 'ends of public justice.' " *Id.* at 468.

It is well settled that a defendant has a "valued right to have his trial completed by a particular tribunal...." *Wade* v. *Hunter*, 336 U.S. 684, 689 (1949). See *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 18 (1923); *Commonwealth* v. *Micheli, supra* at 92. When a judge, acting without the defendant's consent, aborts the proceeding, as was done in the present case, the defendant is deprived of this right to have his case decided on the merits. See *United States* v. *Jorn, supra* at 484. Nonetheless, we recognize that this right must in some instances be subordinated to the ends of public justice. See *Thames* v. *Commonwealth*, 365 Mass. 477, 479 (1974); *Commonwealth* v. *Juliano*, 358 Mass. 465, 467 (1970); *Commonwealth* v. *McCormick*, 130 Mass. 61, 62 (1881). As was said in *Commonwealth* v. *Juliano, supra* at 467, "The power given to the court [to

end a trial] cannot be exercised arbitrarily or without good cause and can only be used for the protection of the public and the security of the defendant and his right to an impartial trial." A trial may be aborted "by reason of some physical or moral necessity arising from no fault or neglect of the government. When such is the case, the trial may be stopped, and the defendant will not be protected from being afterwards tried upon the same indictment." *Ibid.*, quoting from *Commonwealth* v. *McCormick, supra* at 62.

Measured against these standards, we cannot say that there was a "manifest necessity" for the judge's action. Unlike the situation in *Illinois* v. *Somerville, supra,* the defendant in the present case was placed on trial on a valid complaint. The termination of the trial for what amounted to prosecutorial error or oversight in not charging the defendant with the more serious offense of possession of heroin with intent to distribute cannot justify the suspension of a trial on a valid complaint when done over the defendant's objection. If a prosecutor or judge may not subject a defendant to a second prosecution by discontinuing a trial in order to afford the prosecution a more favorable opportunity to convict (*Downum* v. *United States,* 372 U.S. 734, 736 [1963]; *Green* v. *United States,* 355 U.S. 184, 188 [1957]), it cannot reasonably be argued that a trial may be terminated in order to provide the State with a more favorable opportunity to convict on a more serious charge, carrying a greater punishment. The conclusion we reach is consistent with that of other jurisdictions which have considered the question. See, e.g., *People ex rel. Blue* v. *Kearney,* 181 Misc. 981 (Sup. Ct. 1943), aff'd, 292 N.Y. 679 (1944); *State* v. *Birckhead,* 256 N.C. 494 (1962); Annot., 6 A.L.R.3d 905 (1966, Supp. 1975), and cases cited therein.

Although we conclude that jeopardy had attached and that the judge's decision to terminate the proceeding did not comport with the standard of "manifest necessity," the question remains whether the defendant was twice put in jeopardy for the same offense. There is no doubt in this case that the charge of possession of heroin and possession

of heroin with intent to distribute constitute "the same offense" as that term has been applied by this court in *Morey* v. *Commonwealth,* 108 Mass. 433, 434 (1871), and succeeding cases. See *Kuklis* v. *Commonwealth,* 361 Mass. 302, 306 n.2 (1972). As we said in *Kuklis,* "Since the same time, place and type of drug were alleged in each charge, the indictment for possession with intent to sell expressed no more than an aggravated form of simple possession." *Id.* at 307-308. Nonetheless, the Commonwealth argues that the defendant's conviction should not be reversed on double jeopardy grounds, because, under the holding of *Commonwealth* v. *Mahoney,* 331 Mass. 510 (1954), it is permissible to try a defendant in the Municipal Court for possession and later to prosecute him for possession with intent to distribute, since the lower court has no jurisdiction over the latter, more serious offense.

We agree that the prosecution in Superior Court for possession with intent to distribute, an offense outside the jurisdiction of the Municipal Court, was not barred by the initial proceeding on the lesser offense of possession under the reasoning set forth in *Commonwealth* v. *Mahoney, supra* at 514, *Commonwealth* v. *Jones,* 288 Mass. 150, 152 (1934), and *Commonwealth* v. *McCan,* 277 Mass. 199, 204-206 (1931).[3] But it is our belief that these decisions are not dispositive of the case before us, for in none of them was the defendant, as in the present case, convicted of the lesser offense, the very offense for which the defendant was tried in the lower court.

While it is true that in *Mahoney* the defendant's convictions in the lower court of the misdemeanors of assault and battery and larceny were no bar to a subsequent conviction in Superior Court of the felony of robbery, this result

---

[3] Although *Mahoney* does allow for a subsequent prosecution on the greater offense, it does not follow that a defendant may be punished for both the lesser and greater offenses. See *Gallinaro* v. *Commonwealth,* 362 Mass. 728 (1973), and *Kuklis* v. *Commonwealth, supra,* which deal with the problem of duplicitous punishments for the same offense.

was based on the exception to the rule of former jeopardy which provides "that a conviction or acquittal of a minor statutory offence in an inferior court does not bar prosecution for a higher crime of which the inferior court has no jurisdiction." *Commonwealth* v. *Jones, supra* at 152. This exception is inapplicable to the case before us since here the defendant was tried in Superior Court and convicted of an offense over which the lower court had jurisdiction. Considering the constitutionally mandated bar on double jeopardy, we cannot, as urged by the Commonwealth, extend the rule in *Mahoney* so as to sanction the conviction in this case of the lesser offense on the trial for the greater offense. To conclude otherwise would be contrary to the United States Constitution's guaranty against being placed in jeopardy twice.

In support of our conclusion we note that both *Diaz* v. *United States*, 223 U.S. 442 (1912), and *Commonwealth* v. *McCan, supra,* clearly establish that a defendant may not be subjected to a subsequent prosecution in Superior Court on the lesser charge. In *Diaz,* the Supreme Court concluded that the accused was protected, due to his prior trial for assault and battery, "from being again prosecuted for the assault and battery, and therefore [it was] required that the latter be not treated as included, as a lesser offense, in the charge of homicide, as otherwise might have been done . . . ." 223 U.S. at 449. Cited with approval in *Commonwealth* v. *McCan, supra* at 204. To comply with the double jeopardy clause, the judge may not by his charge, as was done in the present case, permit the jury to consider the lesser offense on a prosecution for the greater where the defendant has previously been prosecuted for his lesser included offense. See A.L.I. Double Jeopardy 137 (1935). Cf. *Commonwealth* v. *Vanetzian,* 350 Mass. 491, 494 (1966); *Bennett* v. *State,* 229 Md. 208, 219 (1962). Accordingly, the judgment must be reversed, the verdict set aside, and a judgment of not guilty entered.

*So ordered.*

QUIRICO, J. (dissenting). For the reasons stated below, I respectfully dissent from the decision of the court in this case.

The conclusion reached by the court seems to be the inevitable result of an apparent threshold assumption or implicit holding that, absent unusual circumstances not present in this case, a judge of a Municipal Court or District Court (both herein called District Court) is without power to bind a defendant over for trial in the Superior Court under G. L. c. 218, § 30, on a complaint charging a crime within the final jurisdiction of the District Court unless, before receiving any evidence on the complaint, the judge announces that the hearing is limited to the issue whether the defendant should be bound over. I base my reference to a threshold assumption or implicit holding on the following language in the court's opinion: "This crime [unlawful possession of heroin], as defined in G .L. c. 94C, § 34, is a misdemeanor within the final jurisdiction of the Municipal Court. There is no indication, as required by *Corey* v. *Commonwealth,* 364 Mass. 137, 141 n.7 (1973), that the judge was considering declining jurisdiction as permitted under G. L. c. 218, § 30. Accordingly, we must infer that the judge intended to exercise jurisdiction and that a trial on the charge of possession of heroin was being held in the Municipal Court on January 30, 1974. . . . Having concluded that a trial on the merits had begun, we further find that jeopardy had attached, for the judge had begun to hear evidence."

Having thus concluded that "jeopardy had attached," the court then considered whether there was any "manifest necessity" for terminating the trial without a decision on the merits and held that there was not. That was in turn followed by the holding that the attempt to try the defendant in the Superior Court for the same misdemeanor violated his constitutional protection against double jeopardy.

It is undisputed that by statute (now G. L. c. 218, § 30, as amended through St. 1970, c. 888, § 25) District Courts have long had, and now have, the power to "commit or bind

over for trial in the superior court persons brought before them who appear to be guilty of crimes not within their final jurisdiction," and that they are not limited to the making of a finding of guilt or innocence in such cases. *Commonwealth* v. *Harris*, 8 Gray 470, 476-478 (1857). *Commonwealth* v. *Boyle*, 14 Gray 3, 7 (1859). *Commonwealth* v. *Hamilton*, 129 Mass. 479, 480 (1880). *Commonwealth* v. *Sullivan*, 156 Mass. 487, 489 (1892). In *Commonwealth* v. *Rice*, 216 Mass. 480 (1914), involving a complaint charging a misdemeanor over which the District and Superior Courts had concurrent jurisdiction, we said (at 481) that the District Court "was not required to take full jurisdiction of the case. In any case within the jurisdiction of such courts, they may in their discretion commit or bind over the defendant for trial in the Superior Court, 'if he appears to be guilty of the crime charged.' R. L. c. 160, § 34 [predecessor to present G. L. c. 218, § 30]. In such cases those courts have . . . a discretionary power either to hear and determine the complaint brought before them, exercising in that event a final jurisdiction (except as a defendant, if convicted, may choose to appeal to a higher court), or to bind the defendant over for trial in the Superior Court. This power, like all powers of which the exercise is discretionary, is not to be used arbitrarily, but in view of the circumstances of each particular case, of the penalty which may be called for, and of the necessity which may seem to be shown of an examination by the grand jury of any apparent ramifications that may need to be searched into more thoroughly than conveniently can be done in the lower court."

The sole question is whether, as a prerequisite to the exercise of its power to bind a defendant over to the Superior Court on a complaint charging a misdemeanor, a District Court judge must announce his intention to do so before receiving any evidence on the complaint. I am aware of no decision of this court holding that such an announcement is necessary. In *Commonwealth* v. *Harris*, 8 Gray 470 (1857), the court had before it the question whether the justice of the peace "did in fact exercise the power of an

examining magistrate, hearing the evidence, and proceeding to hold the party to answer further before a higher court; or did he assume final jurisdiction to decide upon the guilt of the party, and proceed so far as to leave in him no other authority on the case than to pass sentence therein." (*Id.* at 478.) The court answered that question in the following language (at 478-479): "The preliminary proceedings were certainly much the same as on a final trial. Perhaps they would ordinarily be so. *It certainly might be important to the party on trial to ascertain, before the evidence was closed, whether it was merely a preliminary examination, or a trial for the offence, with reference to which he would carry the defence*" (emphasis supplied).

In the *Harris* case (at 479), in *Commonwealth* v. *Hamilton,* 129 Mass. 479, 481 (1880), and in *Commonwealth* v. *Sullivan,* 156 Mass. 487, 489 (1892), there is language to the effect that where the record of the District Court or comparable predecessor lower court showed that the hearing in that court resulted in the entry of an order binding the defendant over to the Superior Court or comparable predecessor court of general jurisdiction, that order indicated that the lower court took jurisdiction of the case only for the purpose of making a preliminary examination to determine whether the defendant should be held for the higher court, but not for final determination of his guilt or innocence.

In *Commonwealth* v. *Rice,* 216 Mass. 480 (1914), after first holding, as indicated earlier in this opinion, that a District Court has discretion either to hear and finally determine a complaint charging a misdemeanor or to bind the defendant over to the Superior Court thereon, this court spoke as follows (at 481-482) on the question when the judge could or should decide and announce how he exercised that discretion: "Moreover the judge, as he cannot convict and sentence without sufficient proof of guilt, so too cannot bind over the defendant to the Superior Court unless guilt appears. In each case he must have heard all proper evidence and listened to the arguments of

each party. Ordinarily the discretion cannot be exercised wisely until at least the incriminating evidence has been heard; sometimes its exercise may depend upon the character and credibility of the testimony put in by the defendant. *We are of opinion that at least the judge is not required to make his election before he has heard all the evidence of the prosecution* [emphasis supplied]. Whether the defendant is then entitled as of right, if he so desires, to know whether the judge has determined to decide the case, proceeding to sentence if there shall be a conviction, or to pass upon it merely as an examining magistrate, we need not consider, for here no such request was made. Under the circumstances here presented we are of opinion that all the proceedings before the judge were *in fieri* until he finally should have reached his determination and caused it to be entered of record. Until this has been done, whatever remarks the judge may have made are in legal effect merely statements of what his views then are, and may be recalled and not acted upon. At the close of the evidence he may feel convinced of either the guilt or the innocence of the defendant, and may even so announce; and yet the argument of counsel or the reminder of some piece of evidence which he had overlooked may lead him to the opposite conclusion, and that with a feeling of absolute certainty. So too he may feel that he ought to take full jurisdiction of the case, and convict and impose sentence, or acquit because he is not sure that guilt has been proved with the requisite certainty, and may announce this feeling; but so long at any rate as the case has not been absolutely ended, and his disposition thereof entered upon the record, his final determination remains in his own breast, and he may upon reflection reach the conclusion that justice requires a further investigation of the case, and bind over the defendant to the Superior Court. Or he may reconsider his determination thus to bind over the defendant, and proceed himself to dispose of the case. And so are our decisions [citing the *Harris, Boyle* and *Hamilton* cases cited above in this opinion, and other cases]."

The learning which a District Court judge would gain

from a reading of the language quoted above from the decisions in the *Harris* and *Rice* cases is that as to a complaint charging a misdemeanor over which the District and the Superior Courts have concurrent final jurisdiction, (a) he has discretionary power either to exercise his full jurisdiction by making a finding of guilt or innocence and making a disposition in the event of a finding of guilt, or to bind the defendant over to the Superior Court on a finding that the defendant was probably guilty, (b) he is not required to decide or announce in advance of any trial or hearing that it will be limited to the question whether the defendant should be bound over to the Superior Court, and (c) he may conduct a hearing on the complaint as though it were a trial on the issue of innocence or guilt, and at the end of the hearing he may dispose of the matter by binding the defendant over to the Superior Court in lieu of a determination of innocence or guilt.

I am aware of no decision in which this court has ever overruled any part of the *Rice* case. The judges of the District Courts have for years generally followed the procedures approved in the *Rice* case, at least up to the date of the decision in *Corey* v. *Commonwealth,* 364 Mass. 137 (1973). The opinion in the *Corey* case included a footnote (at 141 n.7) which recognized the rule of the *Rice* case in the following language. "Earlier decisions by this court suggested that a District Court judge need not indicate to defence counsel prior to the hearing whether it is to be a trial on the merits or a probable cause hearing. See *Commonwealth* v. *Goddard,* 13 Mass. 455, 456 [1816]; *Commonwealth* v. *Rice,* 216 Mass. 480, 481 [1914]. In practice, many District Court judges do not decide whether to conduct a full trial on the merits until they have heard the prosecution's evidence." The footnote then suggests that the practice described "creates serious tactical problems for defence counsel who have no way of knowing until the end of the hearing whether the hearing is for probable cause or a full trial on the merits," referring to K.B. Smith, Criminal Practice and Procedure § 686 (1970). The footnote then states: "To avoid these problems, a District

Court judge should announce, *before the hearing commences,* whether he is conducting a probable cause hearing or a full trial on the merits. Before making this initial decision, the District Court judge may ask counsel for both the prosecution and defence for a discussion limited to the circumstances of the particular case necessary to aid him in his decision to exercise or decline final jurisdiction."

It is my present opinion, as it was at the time of the *Corey* decision (see concurring opinion of Quirico, J., 364 Mass. at 144 [1973]), that fn.7 thereto was not relevant to the issues then before the court and that it was therefore dictum. I do not consider that dictum as having the effect of overruling the *Rice* case. I agree that it is desirable that a District Court judge state in advance, if reasonably possible, whether a hearing which he is about to hold on a complaint charging a crime within his final jurisdiction is to be a trial on the merits or simply a hearing on whether the defendant should be bound over to the Superior Court. However, I do not agree that anything in the *Corey* decision operates to impose on the District Court judge the obligation to make and announce such a decision in advance or be precluded from binding the defendant over. That the court thinks otherwise is apparent from the statement in its opinion in the present case to the effect that "[t]here is no indication, as required by *Corey* v. *Commonwealth* ... that the judge was considering declining jurisdiction as permitted under G. L. c. 218, § 30." I cannot agree that language which I believe was dictum when used has, without more, become a rule of constitutional implications.

I do not believe that the conclusion reached by the court in this case is compelled by *Breed* v. *Jones,* 421 U.S. 519 (1975), or by our decision in *Stokes* v. *Commonwealth,* 368 Mass. 754 (1975), which recognized and was in accord with the *Breed* decision on comparable facts. In the *Stokes* case the defendant was charged with juvenile delinquency by reason of having committed a crime which, if committed by an adult, would have been charged as murder in the first degree. The juvenile complaint was dismissed and he

was thereafter indicted, tried and convicted as an adult for the crime of murder in the first degree with the resulting mandatory penalty of life imprisonment. The disposition would necessarily have been much more favorable to the defendant if his prosecution had continued on the juvenile delinquency complaint (G. L. c. 119, § 58), and it is even possible that it might not have involved any period of involuntary confinement or custody. Therefore, if the defendant in the *Stokes* case had been placed in jeopardy by the presentation of evidence on the juvenile complaint and he was thereafter prosecuted as an adult, the extent of the potential prejudice to him by the adult trial was imprisonment for life. By contrast the exposure of the defendant in the present case on the charge of illegal possession of heroin, a misdemeanor, was the same whether the conviction was on the original complaint against him or on the later indictment by the grand jury. In either case the maximum penalty was "imprisonment in a house of correction for not more than two years or by a fine of not more than two thousand dollars, or both." G. L. c. 94C, § 34, as amended by St. 1972, c. 806, §§ 23, 24. We are not here dealing with any one of the felonies over which the District Courts have jurisdiction concurrent with the Superior Court under G. L. c. 218, § 26, as amended by St. 1973, c. 585, and which would permit a sentence to the State prison if disposed of on an indictment by the Superior Court, but would be limited to a house of correction penalty if disposed of on a complaint in the District Court.

The court's opinion in this case will have the effect of adding yet another step in the already seemingly endless proceedings for the disposition of criminal cases. The interposition of a requirement that a District Court judge make and announce a decision in advance of a hearing on a complaint for a misdemeanor whether that hearing is to be on the merits or limited to the preliminary question whether to bind over the defendant to the Superior Court will itself be followed by a claim by defendants of a right to a hearing on what that preliminary decision should be. We can ill afford to add yet more steps which will further delay crim-

inal prosecutions at a time when our courts are already dangerously close to being unable to try cases in time to avoid having to dismiss them for violation of the defendant's right to a speedy trial.

My position may be summarized as follows. A District Court judge may, for reasons which he deems sufficient, announce before holding any hearing on a complaint charging a misdemeanor within the court's jurisdiction that the hearing is to be limited to the preliminary question whether the defendant should be bound over to the Superior Court. If the hearing is so limited, the judge may not, without the consent of the defendant, adjudicate his guilt or innocence of the crimes charged. If the judge announces no such limitation in advance of the hearing, the hearing will be conducted as though it were a full trial of the complaint on its merits and at the close of the hearing and arguments by or in behalf of the parties the judge may either (a) take jurisdiction of the case, make a finding of guilt or innocence and dispose of it accordingly, or (b) bind the defendant over to the Superior Court. In the latter event, the defendant shall not be entitled to termination of proceedings in the Superior Court on the claim of prior jeopardy because of the District Court proceedings. *Burhoe* v. *Byrne*, 289 F. Supp. 408, 411 (D. Mass. 1968).