**CORNERO v. UNITED STATES.**

No. 6295.

Circuit Court of Appeals, Ninth Circuit.
March 23, 1931.

Otto Christensen and Simpson & Simpson, all of Los Angeles, Cal., for appellant.

Samuel W. McNabb, U. S. Atty., and Harry Graham Balter and Milo E. Rowell, Asst. U. S. Attys., all of Los Angeles, Cal.

Before RUDKIN, WILBUR, and SAWTELLE, Circuit Judges.

WILBUR, Circuit Judge.

The appellant, with seven others, was charged with conspiracy to violate the National Prohibition Act. The indictment, returned on June 16, 1927, alleges that the conspiracy was entered into on the 1st of June, 1925, to "possess and transport" intoxicating liquors. The appellant pleaded not guilty on July 12, 1927. Four of the defendants, Jones, Howell, Richards, and Allen, pleaded guilty. On May 3, 1928, a jury was impaneled to try the appellant and L. V. Murphy. The jury was discharged on May 8, 1928. The appellant claims that, by reason of the selection of the jury on May 3 and its subsequent discharge on May 8, he was placed in jeopardy. He opposed the continuance of the case and the discharge of the jury, and, before a jury was again selected, on May 6, 1930, to try appellant and two of his codefendants, appellant interposed a plea of former jeopardy, which was overruled. Thereupon the case proceeded to trial upon the plea of not guilty, and a verdict of guilty was returned against appellant and Jack Wilson, a codefendant. The jury disagreed as to defendant L. V. Murphy. Appellant was sentenced to imprisonment for two years at McNeil Island and to pay a fine of $7,500. Wilson was placed on probation.

The general rule is that, where the jury has been impaneled for the trial of a criminal case, jeopardy has attached, and in such case the plea of former jeopardy should be sustained. There are exceptions, however, to this general rule as to what constitutes former jeopardy, and the government contends that the case at bar comes under one of these exceptions. It appears from the record that, when the case was called for trial, the district attorney proceeded to impanel the jury without having ascertained whether or not his witnesses were present. He was relying upon the testimony of two of the codefendants, Howell and Jones, who had previously pleaded guilty and who were released under bond to appear for sentence on the day of trial. They were not subpœnaed as witnesses, but it was assumed by the district attorney that they would be present at the trial in view of their obligation and bond so to do. Immediately after the first jury was impaneled, the district attorney ascertained that his witnesses were absent, whereupon the court continued the case from time to time to May 8. On that date the district attorney announced:

"Mr. Gallagher [the district attorney]: If your Honor please, in that matter we wish to move for a continuance on behalf of the

Government. This is a matter that involves the intimidation of witnesses whom we have not been able to locate, and we are not ready for trial. We are endeavoring to locate the witnesses, and I believe, your Honor, that the continuance of this matter would not be outside the court's sound judicial discretion.

"The Court: Are the witnesses not here?

"Mr. Gallagher: No. We have not been able to determine their whereabouts.

"The Court: What efforts have you made to get them?

"Mr. Gallagher: The witness Jones has closed his home and stored his furniture and bought two new tires for his automobile and started for a place unknown. Boarders in a house near his are watching the despatch of communications to stop them from reaching us and are intercepting messages to Jones. We have interviewed Howell's wife and she doesn't know his whereabouts. Those two witnesses are absolutely indispensable, to the proof of the Government's case.

"Mr. Simpson: If your Honor please, we renew our objections to the continuance of this case and wish to call the court's attention to the fact that the district attorney had an opportunity prior to the time the jury was empaneled and sworn to ask for a continuance. There have been—

"Mr. Gallagher (interrupting): The record will show I did not have the opportunity.

"Mr. Simpson: There have been no subpoenas issued in this case for the attendance of those two witnesses, although the subpoenas were issued for other witnesses. There is no showing in this case that if those two witnesses were present that they would be competent to testify or that their testimony would be material. There is no showing of any due, or in fact any, diligence in this case to procure the attendance of those witnesses. For those reasons and on those grounds, and the fact that the defendant is in jeopardy and here in court, we move the court to instruct the Government to proceed at this time or that the jury be instructed to return a verdict of not guilty.

"The Court: The gentlemen of the jury are discharged.

"Mr. MacDonald: We object, your Honor, to the discharging of the jury in this case at this time.

"The Court: The case will go off calendar.

"Mr. MacDonald: May an objection and an exception to the order of the court discharging the jury be noted?

"The Court: Surely. The case is off calendar. It automatically goes over to the term unless the district attorney makes some other disposition of it in the meantime.

"Mr. Gallagher: If your Honor please, in the Cornero case the defendant Richards has appeared. May I suggest that the time of his sentence be deferred until some time during this term?

"The Court: June 25th.

"The Clerk: Your Honor, were Frank Cornero and Murphy present in court this morning?

"The Court: Yes, they were present."

The district attorney contends that the jury was not impaneled on May 3, 1928, with the understanding that both sides were ready to proceed on the merits. When the case was called for trial, the district attorney stated that there were three witnesses for the government, two of whom had failed to make an appearance. He suggested to the court that perhaps they could impanel the jury and have one of the investigating officers make a search and "see why they are not here."

Three defendants, Murphy, Richards, and Cornero, were present in court and responded to the call of their names, whereupon the district attorney stated:

"May I suggest we impanel the jury and that I have a short time to ascertain as to the witnesses?"

Thereupon the jury was impaneled and sworn to try the case. The court then asked if the district attorney was ready to proceed, and he stated that he was not, and would like a short continuance to ascertain where his witnesses' were. Both lived out of the county in which the trial was held, one in San Bernardino and one in Orange county. The district attorney stated both witnesses were absolutely indispensable. The jury were temporarily excused, and, upon the motion of the district attorney, the bonds of the defendant-witnesses who had failed to appear were forfeited and a bench warrant issued. The case was continued to 10 o'clock the next morning over the objection·of the appellant. The next morning, May 4, the district attorney announced his inability to go to trial, and indicated his belief that the defendants had fled. The district attorney requested a continuance until the July calendar. The court denied this request, but continued the case until Tuesday, May 8, at which time the jury was discharged, as hereinbefore stated.

■ The district attorney, upon his own suggestion, proceeded with the impanelment of

the jury on May 3 without having ascertained whether or not his witnesses were present. Nothing was done by the defendant at that time which would prevent his raising the question of former jeopardy. The fact is that, when the district attorney impaneled the jury without first ascertaining whether or not his witnesses were present, he took a chance. While their absence might have justified a continuance of the case in view of the fact that they were under bond to appear at that time and place, the question presented here is entirely different from that involved in the exercise of the sound discretion of the trial court in granting a continuance in furtherance of justice. The situation presented is simply one where the district attorney entered upon the trial of the case without sufficient evidence to convict. This does not take the case out of the rule with reference to former jeopardy. There is no difference in principle between a discovery by the district attorney immediately after the jury was impaneled that his evidence was insufficient and a discovery after he had called some or all of his witnesses. It is uniformly held that, in the absence of sufficient evidence to convict, the district attorney cannot by any act of his deprive the defendant of the benefit of the constitutional provision prohibiting a person from being twice put in jeopardy for the same offense. Ex parte Lange, 18 Wall. (85 U. S.) 163, 21 L. Ed. 872; Const. Amend. 5; Jarl v. U. S. (C. C. A.) 19 F.(2d) 891. In U. S. v. Shoemaker, 27 Fed. Cas. 1067, No. 16279, 2 McLean, 114, this question was fully discussed, and it was held that, where the district attorney entered a nolle prosequi after the jury had been impaneled and witnesses sworn, jeopardy had attached.

In U. S. v. Watson, Fed. Cas. No. 16651, where the case was continued after the impaneling of the jury, a juror was withdrawn from the box and the jury discharged on account of the illness of the district attorney and the absence of witnesses for the prosecution. It was held that jeopardy attached and the defendant could not be retried. It is also held in Hipple v. Texas, 80 Tex. 531, 191 S. W. 1150, L. R. A. 1917D, 1141; Pizano v. State, 20 Tex. App. 139, 54 Am. Rep. 511; People v. Barrett, 2 Caines (N. Y.) 304, 2 Am. Dec. 239; State v. Richardson, 47 S. C. 166, 25 S. E. 220, 35 L. R. A. 238, and in Allen v. State, 52 Fla. 1, 41 So. 593, 120 Am. St. Rep. 188, 10 Ann. Cas. 1085, that the mere absence of a witness is insufficient to justify the court in discharging the jury under the rule of manifest necessity and that jeopardy attached.

The government, to avoid the claim of former jeopardy, relies upon the rule variously stated by textbooks and in judicial decision, to the general effect that, in case of a most urgent necessity, the trial judge has authority, in the exercise of sound discretion, to discharge the jury, and that in a case of such urgent necessity such action under such circumstances will not constitute former jeopardy. This is stated to be a more modern modification of the doctrine of jeopardy. 16 C. J. 250, §§ 394, 395; 12 Cyc. 269, subd. (g); 8 R. C. L. 153, § 142; U. S. v. Shoemaker, supra; Thompson v. U. S., 155 U. S. 271, 273, 15 S. Ct. 73, 74, 39 L. Ed. 146; U. S. v. Perez, 9 Wheat. 579, 580, 6 L. Ed. 165; Lovato v. New Mexico, 242 U. S. 199, 37 S. Ct. 107, 61 L. Ed. 244; Simmons v. U. S., 142 U. S. 148, 12 S. Ct. 171, 35 L. Ed. 968; Ex parte Lange, 18 Wall. 163, 21 L. Ed. 878; Blair v. White (C. C. A.) 24 F.(2d) 323. These cases are cited by the government as authority for the proposition that, whenever it is necessary for the purposes of justice, or in order that the ends of public justice may not be defeated, the court can discharge a jury without the consent of the defendant, in the exercise of its sound discretion, and such proceedings would not constitute former jeopardy. It is true that there is language used by the courts in the foregoing cases which, divorced from its context and applied as authority for the general proposition, would sustain the rule advocated by the government in the case at bar. We are here dealing, however, with a fundamental right of a person accused of crime, guaranteed to him by the Constitution, and such right cannot be frittered away or abridged by general rules concerning the importance of advancing public justice. An examination of the cases cited will disclose the fact that no court has gone to the extent of holding that, after the impanelment of the jury for the trial of a criminal case, the failure of the district attorney to have present sufficient witnesses, or evidence to prove the offense charged, is an exception to the rule that the discharge of a jury after its impanelment for the trial of a criminal case operates as a protection against a retrial of the same case. Without undertaking to analyze or discuss all the cases cited, a statement of the situation involved in some of the decisions by the Supreme Court which are relied upon by the government will indicate that the general expressions used by the court in such decision has reference to an entirely different situation than that presented by the case at bar. In Thompson v. U. S., it was discovered, after the jury had been

sworn and the witnesses examined, that one of the jurors was disqualified by reason of having been a member of the grand jury that found the indictment. It will be observed that, as only eleven competent jurors had been sworn to try the case, it might be readily held that no proper jury was ever impaneled. It was in connection with this claim that the court made the statement which is relied upon by the government:

"As to the question raised by the plea of former jeopardy, it is sufficiently answered by citing United States v. Perez, 9 Wheat. 579 [6 L. Ed. 165]; Simmons v. United States, 142 U. S. 148, 12 S. Ct. 171 [35 L. Ed. 968]; and Logan v. United States, 144 U. S. 263, 12 S. Ct. 617 [36 L. Ed. 429]. Those cases clearly establish the law of this court that courts of justice are invested with the authority to discharge a jury from giving any verdict whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated, and to order a trial by another jury; and that the defendant is not thereby twice put in jeopardy, within the meaning of the fifth amendment to the constitution of the United States."

The first case cited in support of the foregoing rule, U. S. v. Perez, 9 Wheat. 579, 6 L. Ed. 165, is one much relied upon by the government in this case. The statement made by the court in U. S. v. Perez has been so often quoted in subsequent cases that we do not set the same out in full. It does not appear from the opinion under just what conditions the former jury was discharged, but it was stated in Dreyer v. Ill., 187 U. S. 71, 85, 23 S. Ct. 28, 33, 47 L. Ed. 79, where, referring to U. S. v. Perez, supra, it was said:

"That was a capital case, in which, without the consent of the prisoner or of the attorney of the United States, the jury, being unable to agree, were discharged by the court from giving any verdict. * * * "

The general statement of the rule in U. S. v. Perez, supra, and Dreyer v. Ill., supra, must be construed with reference to the question there involved; namely, as to whether a defendant could be tried by another jury after the first jury had been discharged because of failure to agree upon a verdict. The sound discretion referred to in those opinions is that discretion of the trial court involved in the determination of when and after how long a deliberation the jury should be discharged, for the reason that the accused is entitled to have the jury given a reasonable time to arrive at a verdict before a mistrial should be declared and the jury discharged. In Simmons v. U. S., 142 U. S. 148, 12 S. Ct. 171, 35 L. Ed. 968, supra, citing U. S. v. Perez, supra, it was said:

"The general rule of law upon the power of the court to discharge the jury in a criminal case before verdict was laid down by this court more than 60 years ago, in a case presenting the question whether a man charged with a capital crime was entitled to be discharged because the jury, being unable to agree, had been discharged, without his consent, from giving any verdict upon the indictment."

The court applied the rule announced in U. S. v. Perez, supra, to the situation where it appeared that one of the jurors had sworn falsely on his voir dire that he had no acquaintance with the defendant, whereas it later appeared that he was acquainted with the defendant, and other circumstances in connection with the discovery made it improbable that the jury could act fairly or impartially.

In Logan v. U. S., 144 U. S. 263, 12 S. Ct. 617, 628, 36 L. Ed. 429, supra, the rule announced in U. S. v. Perez, supra, was applied to a case where a jury had been discharged after forty hours' deliberation and had announced in open court that they were unable to agree upon a verdict. It is said in that case:

"Upon those facts, whether the discharge of the jury was manifestly necessary in order to prevent a defeat of the ends of public justice, was a question to be finally decided by the presiding judge in the sound exercise of his discretion."

In Keerl v. Montana, 213 U. S. 135, 29 S. Ct. 469, 53 L. Ed. 734, a defendant had been tried and convicted of murder; the judgment was reversed by the Supreme Court of Montana; upon a second trial the jury disagreed; on the third trial the defendant interposed the plea of once in jeopardy on the ground that the jury was improperly discharged at the end of the second trial. Upon the authority of the previous decision of the Supreme Court hereinabove quoted, it was held that the plea was not well taken.

In Lovato v. New Mexico, 242 U. S. 199, 37 S. Ct. 107, 61 L. Ed. 244, supra, after the jury had been impaneled and sworn, it developed that the accused had not been arraigned and had not pleaded to the indictment. The jury was dismissed temporarily, the accused was arraigned and pleaded and

the same jury was again sworn and the trial resumed. It was held under these circumstances that the procedure involved was at most an irregularity, and the accused had not twice been placed in jeopardy.

None of these cases is authority for the claim of the government in the case at bar under the circumstances presented by the record at the time the first jury was discharged. As has been stated, the position of the district attorney was no different from what it would have been if he had produced all the evidence he had the ability to produce and had discovered that such evidence was insufficient to justify a conviction. His announcement in advance of the presentation of evidence that indispensable witnesses were absent was merely an admission that he could not convict the defendant with the evidence that he was able to produce.

There is nothing in the cases cited by the government that militates against the authority of the cases we have cited, which are to the effect that mere absence of witnesses discovered after the jury is impaneled is insufficient to deprive the accused of his right to claim former jeopardy upon a subsequent trial where the jury is discharged without his consent and notwithstanding his objection. The court should have granted the motion of the defendant that the court "instruct the Government to proceed at this time, or that the jury be instructed to return a verdict of not guilty" (Bishop on Crim. Proc. vol. 1, § 1016; U. S. v. Shoemaker, 27 Fed. Cas. 167, No. 16279, 2 McLean, 114 supra; Bishop, New Crim. Proc. vol. 2, § 820; Id. § 818, or should have discharged the defendant Bishop, New Crim. Proc. vol. 2, §§ 818, 820, 830). In either event the order would be equivalent to an acquittal so far as another trial upon the same charge is concerned. Bishop Crim. Proc., vol. 2, § 818.

Judgment reversed, with instructions to the trial court to dismiss the case and discharge the defendant.