David Montgomery WEBB, Petitioner,

v.

Terrell Don HUTTO, Respondent.

Civ. A. No. 81–0396–R.

United States District Court,
W.D. Virginia,
at Roanoke.

Dec. 8, 1982.

Harry F. Bosen, Jr., Salem, Va., for petitioner.

Richard B. Smith, Asst. Atty. Gen., Richmond, Va., for respondent.

MEMORANDUM OPINION

TURK, Chief Judge.

David Montgomery Webb filed this petition for a writ of habeas corpus challenging

the validity of the judgment of the Circuit Court for the City of Roanoke entered July 24, 1980, in which he was found guilty of Possession with Intent to Distribute a Controlled Substance and Possession of a Schedule II Controlled Substance. The court sentenced petitioner under those convictions, suspending one sentence and partially suspending the second sentence so that petitioner must serve a total of six years.

Petitioner now challenges the constitutionality of his confinement. Specifically, petitioner contends that the trial court granted the prosecution a continuance during the presentation of the state's evidence solely for the purpose of seeking out additional evidence against the accused. Petitioner asserts that the granting of the continuance violated petitioner's right to due process of law under the Fourteenth Amendment, right to a speedy trial under the Sixth Amendment, and right against double jeopardy.

The Commonwealth responded to the petition for a writ of habeas corpus with a Motion to Dismiss. Briefs were submitted from both the petitioner and the respondents with regard to the Motion. By Order and Memorandum Opinion entered May 20, 1982, this Court granted the respondent's Motion to Dismiss. However, upon motion of petitioner to reconsider, the Order of May 20, 1982, was vacated. The matter was set for an evidentiary hearing so that the record could be further developed. That hearing having been held, the petition for a writ of habeas corpus is again before the Court.

## I. STATEMENT OF FACTS

During the night of October 30, 1979, the City of Salem police obtained a warrant and searched the residence located at 716 North Mill Road, Salem, for marijuana as the police had probable cause to believe that the occupants had possession of marijuana with intent to distribute. When the police knocked on the door, petitioner answered almost immediately.[1] The police showed petitioner the warrant, entered the premises, and proceeded directly to a bedroom in the back of the house where they found two individuals, Nancy W. Thompson and Virgil D. Spence. Spence appeared to be cutting powder over scales; Thompson stood nearby with scissors. *Trial Transcript,* at 10. The police advised them they were under arrest and escorted them to the living room where petitioner had been waiting.

The police subsequently continued their search of the premises. Among those items found were scales, plastic baggies containing a powder substance[2], a cocaine set and mirror, marijuana, a ledger book, in excess of $6,560 in cash, a bill from International Harvester in the name of petitioner with the address being searched imprinted upon it, and assorted other drug paraphernalia. Based upon the search and seizure of the items, petitioner was indicted by the Grand Jury on May 16, 1980. Thompson and Spence were similarly indicted as co-defendants.[3]

The first trial scheduled among the three proceeded against petitioner and was set for July 17, 1980. Prior to trial, the Commonwealth's Attorney, by his own admission at trial, made only limited efforts to obtain the testimony of the codefendants against petitioner. *Trial Transcript,* at 45. This is further reflected in testimony by counsel for Spence who did not recall the Commonwealth's Attorney being the "aggressor" as far as communications between the two were concerned. *Hearing,* at 11.

---

1. Although not the owner of the dwelling, petitioner resided there when he was in Roanoke. Nancy Thompson, a co-defendant, owned the premises.

2. Subsequent laboratory analysis proved the substance to be Metamphetamine, a Schedule II controlled substance.

3. Although not indicted until May of 1980, the three retained counsel shortly after their arrest. Documents submitted by counsel for petitioner at the *habeas* proceeding show that the Commonwealth's Attorney was aware of those counsel retained to represent the three well in advance of trial. *See Hearing of September 24, 1982* (hereinafter "Hearing"), Exhibits 1, 2, and 3.

Rather, counsel for Spence believed that he had contacted the Commonwealth's Attorney on one occasion regarding a plea bargain for his client but that the Commonwealth's Attorney did not seem interested. *Hearing,* at 11. Accordingly, any contact between the Commonwealth and the defendants was minimal at best.

Petitioner's trial commenced July 17, 1980. The Clerk asked the Commonwealth and the defendant whether they were ready to proceed. Both answered in the affirmative. *Trial Transcript,* at 2. The Court arraigned the defendant at that time during which he plead not guilty to both counts. The defendant further agreed that both indictments would be tried at the same time. The defendant then waived his right to a jury trial and the Commonwealth put on its evidence.

The Commonwealth first called the detective who had searched the premises on October 30, 1979, and found the drugs. Testimony elicited from the detective on direct examination recited the circumstances surrounding the search and seizure. The cross examination of the witness by counsel for the accused effectively implied that the accused was not involved with the drugs found in the house. On cross examination, the witness testified that the accused did not try to run and in fact invited the police into the house, *Trial Transcript,* at 27, that the accused answered the door immediately although it was apparent that individuals in the back room where the drugs were found probably would not have heard the knock on the door, *id.,* at 30, that no drugs were found on the dresser with the accused's clothes, *id.,* at 33, that many of the items seized were situated near female apparel or cosmetics, *id.,* at 35, that the ledger book and the cash found were located next to a bank account identification card belonging to Thompson, *id.,* at 36, and that the search warrant and accompanying affidavit executed by the police identified Thompson only as the seller of drugs, *id.,* at 40.

Immediately upon the completion of the testimony of this witness, the Commonwealth's Attorney moved for a continuance so that he could obtain the testimony of the co-defendants against the accused:

... In the preparation of this case, the Commonwealth has not attempted, although there are two other co-defendants, has not attempted to enter into any sort of plea agreement wherein a co-defendant whether that co-defendant be Mr. Webb or Miss Thompson or Mr. Spence would testify against any of the other two co-defendants. We have approached counsel ... co-counsel about whether or not they felt it would be in their client's best interest to testify voluntarily for the Commonwealth. And in preparing for trial yesterday I touched base once again the office of Mr. Spence's attorney, that being Mr. Charles Phillips. Mr. Phillips being out of town, Mr. Doherty received the message and being unaware of this particular case attempted to contact Mr. Spence as to whether or not he perhaps might wish to testify in this case ... We're asking a continuance, so to speak, or a recess until Mr. Phillips who is Mr. Spence's attorney, who is presently on vacation would return to town on Monday, so that he might properly advise his client whether or not it would be in his best interest to voluntarily testify... I would only assume that Mr. Spence would, if he desired to testify as to the truth, from what the Commonwealth knows of the case the truth would be have tremendous impact on this particular case. And we respectfully ask the Court to grant the Court ... grant the Commonwealth that recess so that we might determine whether or not Mr. Spence does in fact wish to testify as to the truth of the facts before the Court today.

*Trial Transcript,* 45–46.[4]

Based solely upon the representations of the Commonwealth's Attorney, the Court understood from the statement that the witness would testify in the proceeding and

---

**4.** The *habeas* hearing produced the following undisputed facts with regard to the effort to obtain the testimony of the codefendants: Nei-

ther of the co-defendants had been subpoenaed to testify at the trial held that day, *Hearing,* at 22 and 46, that one of the co-defendants, Virgil

the "only reason for the delay was to verify that to see that Mr. Phillips doesn't have some other plans for his client other than to . . ." *Trial Transcript,* at 46. So that the record would be clear, the court requested that the absent attorney's partner relate to the court what plans the attorney had for the co-defendant. Over the vehement objections of the accused's counsel, the Court granted the motion for the continuance:

> BY THE COURT: Well, in the interest of justice as you indicated I don't know whether this person would be more favorable to the Commonwealth or more favorable to the defendant, but he can shed some light on the truth of it. Under the circumstances, the Court will recess this case and continue it over and so . . . to 2 o'clock next Tuesday, July 22 . . .

*Id.,* at 50.

On July 22, 1980, the Court reconvened and the Commonwealth again presented its case against the petitioner. In addition to the policemen who executed the search warrant, the Commonwealth presented as witnesses the two codefendants of the accused.[5] Based on the evidence presented after the continuance, the Court found the petitioner guilty of the charges.

## II. GROUNDS FOR WRIT OF HABEAS CORPUS

Petitioner now challenges the validity of his conviction by focusing on the continuance granted by the Court which delayed the trial thereby allowing the Commonwealth to obtain the two co-defendants as witnesses. Petitioner contends that the granting of the continuance violated his rights to due process, constituted double jeopardy in violation of the Fifth Amendment, and denied him his right to a speedy trial. For the reasons set forth below, the Court is of the opinion that the double jeopardy claim merits relief.

### A. DOUBLE JEOPARDY

The Fifth Amendment provides, in pertinent part, that "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb."[6] Although originally construed to apply to only those prosecutions commenced after a first verdict had been rendered, the Double Jeopardy Clause later evolved to include subsequent prosecutions where the first did not culminate in a conviction or an acquittal. *See United States v. Perez,* 22 U.S. (9 Wheat) 579, 6 L.Ed. 165 (1824). Currently, the prohibition against double jeopardy is seen to protect three interests of the accused. First, it protects against a second prosecution for the same offense after acquittal. Secondly, it protects against a second offense after prosecution. Finally, it protects against multiple punishments for

---

Spence, was present in the courthouse during the trial of petitioner, with the knowledge of the Commonwealth's Attorney, *id.,* at 55, and that despite his presence, the co-defendant was not called to the stand to determine whether he would answer questions or not, *Id.,* at 52. Counsel representing Spence at the time of the trial indicated in the *habeas* proceeding that he instructed his client to "tell the truth and cooperate to the best of his ability" should he be subpoenaed. *Hearing,* at 12–13. However, as the co-defendant was never subpoenaed or called to testify even though present in the courthouse, there was no indication of the testimony that would have been elicited.

5. Of primary importance to the Court is that the original purpose of the continuance was to obtain the testimony of Spence alone. However, when the trial reconvened, *both* codefendants, although originally not subpoenaed nor part of the plan to prosecute the accused, testi-

fied against petitioner. The transcripts of the trial reflect the importance of the testimony, especially that of Thompson, in securing the conviction of petitioner.

6. The basis for the prohibition against double jeopardy is articulated in *Green v. United States,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957):

> "The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."

355 U.S. at 187–188, 78 S.Ct. at 223.

the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

■ The Double Jeopardy Clause applies only when jeopardy has "attached". When jeopardy attaches depends upon the type of trial involved. Where a jury trial is requested, jeopardy attaches when the jury is empaneled and sworn. *Crist v. Bretz,* 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978). Where, as in petitioner's case, the trial is before a judge, jeopardy attaches when the first witness is sworn. *Serfass v. United States,* 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975). In the case currently before the Court, it is clear from the record that jeopardy attached since the Commonwealth presented evidence through the testimony of a sworn witness. Therefore, it remains for the Court to determine whether the continuance granted by the trial court upon the motion of the Commonwealth to obtain additional witnesses for the prosecution and over the objections of the defendant constitutes double jeopardy.

The Court first notes that there are relatively few cases reported where the prosecution commenced without necessary witnesses being present. Nearly identical factual situations and legal issues existed in those cases. In each case, the trial was by jury and not before a judge. During the course of the trial, the court discharged the jury before a verdict had been reached. The issue decided was whether the subsequent prosecution of the accused after the discharge of the jury violated the Double Jeopardy Clause and was therefore barred. Although the instant situation varies from those cases in that the discharge of a jury clearly terminates the proceeding whereas a continuance granted by the trial court is not so clear, the Court believes that they provide proper guidance for the disposition of the petition now before the Court since a diligent search for case law whereby the granting of a continuance in a *bench* trial affects the Double Jeopardy Clause proved fruitless.

In *Cornero v. United States,* 48 F.2d 69 (9th Cir.1931), *Annot.,* 74 A.L.R. 83 (1931), the court noted the following facts:

> ... When the case was called for trial [on May 3, 1928,] the district attorney proceeded to impanel the jury without having ascertained whether or not his witnesses were present. He was relying upon the testimony of two of the codefendants ... who had previously pleaded guilty and who were released under bond to appear for sentence on the day of the trial. They were not subpoenaed as witnesses, but it was assumed by the district attorney that they would be present at the trial in view of their obligation and bond so to do. Immediately after the first jury was impaneled, the district attorney ascertained that his witnesses were absent, whereupon the court continued the case from time to time to May 8...

48 F.2d at 69.

On May 8, the district attorney announced that he was still unable to locate the witnesses whereupon the court discharged the jury. On May 6, 1930, two years after the first attempt to try the accused, the accused was tried and convicted.

Although the issue specifically before the Court consisted of whether the discharge of jury in the first proceeding barred the subsequent reprosecution of the accused, the Court's opinion stated principles that apply just as well to the granting of a continuance where witnesses for the prosecution are absent. The opinion notes that the district attorney, "upon his own suggestion, proceeded with the impanelment of the jury ... without having ascertained whether or not his witnesses were present. Nothing was done by the defendant at that time would prevent his raising the question of former jeopardy." 48 F.2d at 71. Thus, the district attorney's acts in not ensuring the presence of the witnesses and the accused's failure to contribute to the situation which might prevent the accused from raising a former jeopardy claim must be considered.

■ The Court also stated that "[T]here is no difference in principle between a discovery by the district attorney immediately after the jury was impaneled that his evidence was insufficient and a discovery after he had called all or some of his witnesses." *Ibid.* Rather

the position of the district attorney was no different from what it would have been if he had produced all the evidence he had the ability to produce and had discovered that such evidence was insufficient to justify a conviction. His announcement in advance of the presentation of evidence that indispensable witnesses were absent was merely an admission that he could not convict the defendant with the evidence that he was able to produce.[7]

*Id.,* at 73.

Thus, once jeopardy attaches, whether it be through the impanelment and swearing of the jury or, in the case of a trial before a judge, the sworn testimony of the first witness, the prosecutor may not stop the trial merely because of insufficient evidence or missing indispensable witnesses. *Id.,* at 71.

■ The Supreme Court expressly approved *Cornero* in *Downum v. United States,* 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963), although it did not go as far as *Cornero* in holding that anytime a witness is absent and a continuance is sought, the Double Jeopardy Clause is invoked. When faced with facts strikingly similar to *Cornero,*[8] the Supreme Court refused to say that the absence of witnesses can never justify the discontinuance of a trial; rather, it indicated that each case must turn on its facts. *Id.,* at 737, 83 S.Ct. at 1035. In noting that the key witness for several counts against the petitioner was absent, the Court held that the discharge of the jury and subsequent re-trial of the petitioner constituted double jeopardy.[9] Accordingly, although the mere absence of witnesses may justify a continuance of the trial, where the absent witness is indispensable to prosecution's case and is absent by virtue of the prosecutor's unexcused negligence, a continuance may constitute double jeopardy.[10]

7. The Court also emphasized that
We are dealing, however, with a fundamental right of a person accused of a crime, guaranteed to him by the Constitution, and such right cannot be frittered away or abridged by general rules concerning the importance of advancing public justice ... [N]o court has gone to the extent of holding that, after the impanelment of the jury for the trial of a criminal case, the failure of the district attorney to have present sufficient witnesses, or evidence to prove the offense charged, is an exception to the rule that the discharge of the jury after its impanelment for the trial of a criminal case operates as a protection against a retrial of the same case.
*Id.,* at 71.
*Cornero* has since been cited for the proposition that the guaranty against double jeopardy "protects an accused against a second trial where the jury in the first trial was discharged solely on the ground that witnesses for the government were absent and therefore their testimony could not be adduced." *Hunter v. Wade,* 169 F.2d 973, 975 (10th Cir.1948).

8. In *Downum,* the facts were as follows:
On the morning of April 25, 1961, the case was called for trial and both sides announced ready. A jury was selected and sworn and instructed to return at 2 p.m. When it returned, the prosecution asked that the jury

be discharged because its key witness on Counts 6 and 7 was not present—one Rutledge, who was the payee on the checks involved in those counts. Petitioner moved that Counts 6 and 7 be dismissed for want of prosecution and asked that the trial continue on the rest of the counts. This motion was denied and the judge discharged the jury over petitioner's objection. Two days later when the case was called again and a jury impaneled, petitioner pleaded former jeopardy. His plea was overruled, a trial was had, and he was found guilty
372 U.S. at 735, 83 S.Ct. at 1033–34.

9. The holding in *Downum* has since been summarized as follows: "In *Downum,* it was the unexcused negligence of the Government attorney in announcing his readiness for trial, when, in fact, he had not subpoenaed a necessary witness that was the basis of the Court's holding of double jeopardy." *United States v. Levy,* 232 F.Supp. 661, 663 (N.D.Fla.1964).

10. This principle is reinforced by *United States v. Gunter,* 631 F.2d 583 (8th Cir.1980) where a continuance was granted on the motion of the prosecution to enable the prosecution to develop circumstantial evidence. The Court held that in view of the neutral evidence submitted and the brief delay resulting from the continu-

■ ▪ Although presenting a factual scenario different from petitioner's, the case of *Harris v. Young*, 607 F.2d 1081 (4th Cir. 1979), provides other insight into the Double Jeopardy Clause:

> After jeopardy attaches, the defendant possesses a valued right to have his guilt or innocence determined before the first trier of fact (Citation omitted) ... Because the Double Jeopardy Clause makes no distinction between bench and jury trials, the fact that [the accused's] trials were before the same judge is immaterial to a determination whether his second trial violated the Fifth Amendment. (Citations omitted) After jeopardy attached at the ... trial, [the accused] possessed a valued right to have the judge decide his case that day, based upon the proof the Commonwealth could adduce.

607 F.2d at 1086.

Accordingly, even though the same judge may preside over a subsequent trial, if jeopardy has attached in the first trial, it is irrelevant that the same judge is trying the case as he is no longer the "first trier of fact".

■ In summary, those cases in which the prosecution's witnesses are absent utilize the following principles. First, after jeopardy attaches, the accused possesses a valued right to have his guilt or innocence determined before the first trier of fact. Secondly, once jeopardy has attached, the prosecutor may not stop the trial merely because of his discovery of insufficient evidence or absent indispensable witnesses.

Finally, although the mere absence of a witness may justify the continuance of a trial, where the witness is indispensable to prosecution's case against the accused and is absent by virtue of the unexcused negligence of the prosecutor, a continuance may constitute double jeopardy.

■ In applying these principles to the facts in the instant case, it is evident to the Court that the granting of the continuance subjected petitioner to double jeopardy in violation of the Fifth Amendment. As indicated previously, jeopardy attached upon the sworn testimony of the first witness in the proceeding. Upon the completion of his testimony, it was evident that the Commonwealth needed to bolster its case with the testimony of the co-defendants to implicate petitioner. Although one such witness was present, the Commonwealth did not call him but rather sought a continuance so that the co-defendant could purportedly obtain the advice of his counsel to determine whether he should testify.[11] Although counsel had been known to the Commonwealth well in advance of the trial date, no effort until shortly before the trial was made to procure the testimony of this witness. The Commonwealth did not even compel the witnesses to be present by subpoenaing them.

When the trial reconvened, petitioner was confronted with not just the testimony of one of his co-defendants but both of them. Neither of them were available to testify on the date the continuance was granted. The petitioner's valued right to have his guilt or innocence determined before the first trier

ance (from 3:30 p.m. of the first day of trial to 11:40 a.m. the next day), there was no abuse of discretion.

11. This court concludes that the Commonwealth Attorney requested the continuance solely because of his realization that the case could not be made against the petitioner without the testimony of at least one of the co-defendants. The trial court also believed that the testimony of a co-defendant would shed light on the case; accordingly, the motion for the continuance was granted. However, it is apparent from the record that the primary reason for the absence of the indispensable witnesses was the Commonwealth's failure to procure their testimony through subpoena.

Respondent cites *Mizell v. Attorney General of New York*, 586 F.2d 942 (2d Cir.1978), *cert. denied*, 440 U.S. 967, 99 S.Ct. 1519, 59 L.Ed.2d 783 (1979), for the proposition that a continuance was proper. 586 F.2d at 947. However, that case is distinguishable from the present situation as it never stressed the importance of the witnesses who were absent. This court concedes that the mere absence of witnesses may justify a continuance; however, it emphasizes that where the continuance is used so that absent indispensable witnesses can be made available, it may place the accused in double jeopardy.

of fact was thereby violated, regardless of the fact that it was the same judge who presided over the trial just a few days earlier. Furthermore, the right of the petitioner to have the judge decide his case the day the trial began based upon the proof adduced by the Commonwealth was violated in that the continuance provided the Commonwealth the opportunity to review the weaknesses in its case and obtain even more evidence against petitioner to secure a conviction.[12]

Had the Commonwealth proceeded with a trial tactic other than a continuance to obtain the co-defendants' testimony, a different result might have been reached. However, because the purpose of the Commonwealth in requesting the continuance was to obtain absent witnesses who were ultimately indispensable to its case against petitioner after the Commonwealth indicated it was ready to proceed with trial and the Commonwealth in fact procured their testimony, this Court concludes that petitioner was placed in double jeopardy in violation of his constitutional rights. Accordingly, the petition for a writ of habeas corpus shall be granted in an order to be entered this day.

---

**12.** The transcript of the trial makes abundantly clear that the co-defendants' testimony was the linchpin in securing petitioner's conviction.